(No. 11038.—Reversed and remanded.)

THE CITY OF CHICAGO, Appellee, *vs.* JAMES F. LORD *et al.*—
(THE NEW YORK CENTRAL RAILROAD COMPANY *et al.*
Appellants.)

*Opinion filed February 21, 1917—Rehearing denied April 5, 1917.*

1. EMINENT DOMAIN—*owner must be compensated where property is actually taken.* Where property is actually taken for an improvement the owner must be compensated to the extent of its actual value, without regard to whether his remaining property is benefited or damaged.

2. SAME—*a railroad company should be compensated for land taken for the location of pillars to support a viaduct over its tracks.* Where land belonging to a railroad company is taken for the location of pillars to support a viaduct for a street over the railroad tracks the company is entitled to compensation for the land actually taken, without regard to whether there is a damage or benefit to the remainder of its property or whether there is or is not an interference with the use of the remaining land for the purposes to which it was devoted.

3. Other questions in this case are controlled by the decisions in *City of Chicago v. Lord,* (*ante,* p. 397,) and *Same v. Same,* 276 Ill. 571.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

HERBERT HAASE, HUBERT HOWARD, ROBERT J. CARY, BERTRAND WALKER, F. HAROLD SCHMITT, A. B. ENOCH, GEORGE A. MASON, and WILLIAM T. HAPEMAN, (EDWARD T. GLENNON, and M. L. BELL, of counsel,) for appellants.

SAMUEL A. ETTELSON, Corporation Counsel, HARRY F. ATWOOD, EUGENE H. DUPEE, and TOLMAN, REDFIELD & SEXTON, (ROBERT REDFIELD, and HENRY P. CHANDLER, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

The city of Chicago instituted proceedings under the Local Improvement act for the improving of Twelfth street by widening it from Michigan avenue to South Ashland

avenue. A strip of land on the south side of the street 68 feet wide in some places, 52 feet wide in some places and 42 feet wide in other places was condemned for the improvement, the cost of which was to be paid by special assessment. Appellants' property, owned either jointly or severally, affected by the improvement was on the south side of Twelfth street between South Clark street and the Chicago river and was occupied and used by various tracks and structures for railroad purposes. Appellants were allowed the nominal sum of $12 for land taken, $1000 for improvements and $2500 for the cost of adjusting certain facilities necessitated by the proposed improvement. The aggregate assessment of benefits confirmed against appellants' property was $37,740.91. From the award of damages and the judgment confirming the assessment this appeal is prosecuted by appellants, the New York Central Railroad Company and the Chicago, Rock Island and Pacific Railway Company.

It is first contended that the court erred in overruling appellants' legal objections. The same legal objections were made by the owners of property in *City of Chicago* v. *Lord,* (*ante,* p. 397.) They were argued in this court by the same counsel in this case as in that case, and it was held in the case referred to that the legal objections were properly overruled, and that must be the decision in this case.

The contention of appellants that the court had no power to increase the assessment of benefits to the public without re-casting the assessment roll and reducing the assessment against all property *pro rata* was decided against the contention of appellants in the case above referred to.

Appellants raise no question as to damages to property not taken but insist they have not been awarded adequate compensation for property taken. Appellants have numerous railroad tracks in and across Twelfth street under the present viaduct, and in order to secure and continue the free use of said tracks on the surface they and a number

of other railroad companies and the city of Chicago entered into an agreement for the construction of a new viaduct above the street as widened and over the tracks of the railroads. From Wabash avenue to Canal street the new viaduct is to be 118 feet wide, with sidewalks on either side 17 feet in width, a right of way for street cars 25 feet in width, and a driveway on either side 29½ feet in width.

Appellants insist that by proceeding to judgment without amending its petition to limit the purpose for which the easement for street purposes was acquired the city repudiated the viaduct contract and secured a judgment which authorizes the taking and use of the land for all street purposes, and that no compensation was awarded appellants on that basis. This question was passed upon in the appeal of the Atchison, Topeka and Santa Fe Railway Company in *City of Chicago* v. *Lord,* 276 Ill. 571, where it was held the judgment was erroneous in not limiting the easement in accordance with the viaduct agreement, and on that ground the judgment was reversed and the cause remanded, with directions to modify the judgment so that the rights acquired by it shall conform to and be subject to the terms of the viaduct agreement.

No question is raised by appellants as to damages to property not taken, but the plan of the proposed viaduct shows that it is to rest on pillars or columns set on appellants' land. It is claimed this is a physical taking of the property occupied by such pillars or columns, for which they were entitled to compensation, without regard to whether it damaged the remainder of their land not taken. The proof, we think, shows that the pillars placed in the street to support the viaduct will necessitate a re-arrangement of some of appellants' tracks and facilities and that such re-arrangement will cost $2500. An award of that amount was made for that purpose, and we think the proof shows that when the pillars are built and the facilities re-arranged

the use of the land for the purposes for which it is now used by appellants will not be materially interfered with.

Appellee contends (1) that the measure of damages in such cases is the interference with the use of the property for the purposes to which it is devoted, and as there will be no interference with such use after the tracks and facilities are re-adjusted, compensation for which was allowed, no damages could be awarded; (2) by the viaduct contract appellants waived all claim for damages caused by the construction of the viaduct. Appellants deny that by the contract they waived claim for damages for property taken. The first proposition of appellee, in our opinion, is not applicable to the question here involved. The rule as to the measure of damages applies to a situation where no property is actually taken but where the use of the railroad property is decreased in value by its use also as a public street or highway. *Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago,* 149 Ill. 457, and *Illinois Central Railroad Co.* v. *City of Chicago,* 169 id. 329, are typical of the many cases upon that subject. But where property is actually taken for an improvement the owner must be compensated to the extent of its actual value, without regard to whether his remaining property is benefited or damaged. *Green* v. *City of Chicago,* 97 Ill. 370; *Harwood* v. *City of Bloomington,* 124 id. 48; *Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago, supra; Metropolitan West Side Elevated Railroad Co.* v. *Springer,* 171 Ill. 170; *St. Louis and Cairo Railroad Co.* v. *Postal Telegraph Co.* 173 id. 508; *City of Chicago* v. *Mecartney,* 216 id. 377; *Illinois Telegraph News Co.* v. *Meine,* 242 id. 568.

Appellee contends that by the second clause of section 4 of the viaduct contract the railroad companies waived all damages that would be caused by the construction of the viaduct. The whole of that section is as follows:

"Sec. 4. Nothing in this agreement contained shall be construed to require the railway companies, or any of them,

277 — 38

to pay any damages to adjacent property caused by the construction or maintenance of the said viaduct or any approach or approaches thereto, or by excavation, elevation, depression or change of grade made in any of the public avenues, streets or alleys by reason thereof, or tó defend any suit or suits which may be brought by or against any party or parties for the recovery of such damages, but all such damages, if there be any, shall be adjusted and paid by the city, and the city will assume the defense of any and all suits brought for the recovery of the same, intervening therein, if necessary, for the purpose, and will wholly relieve the railway companies, and each of them, from defending the same and will assume and pay all judgments recovered therein. In case any suit be brought against any of the railway companies, said company will, provided it has been served with proper summons at least five days before the return day in said suit, give notice in writing of such suit and such service to the mayor and corporation counsel of the city. The railway companies, however, and each of them, hereby expressly waive all claims for damages to any property now belonging to the railway companies or hereafter acquired by them or any of them, caused by reason of the construction or maintenance of the said viaduct or approaches. Nothing in this section contained, however, shall be considered as a waiver by the railway companies, or any of them, of claims for damages for property taken or damaged by the city for the purpose of the proposed widening of the said street."

The second clause must be considered in connection with the rest of section 4 and with section 10, which is as follows:

"Sec. 10. Nothing in this agreement contained shall be construed as a grant to the city by the railway companies, or any of them, of right of way for the proposed widening of East and West Twelfth street, nor as a grant of an easement for the construction of the said viaduct over any portion of the property of the railway companies, or any

of them, nor as a license to the city to enter upon the property of the railway companies, or any portion thereof, for any purpose whatsoever, except for the removal of the present viaduct and for the construction of a new viaduct upon land now owned or hereafter acquired for the construction thereof. Nor shall anything in this agreement contained be construed as a waiver by any of the railway companies of its claim or claims for compensation or damage on account of the taking or appropriation of property for the widening of said street or viaduct, it being the intention of this agreement that the city shall acquire any property necessary for such purpose, whether from the railway companies or others, by purchase or condemnation."

It will be seen the principal subject dealt with by section 4 is the damage to property of others than the railroad companies adjacent to the viaduct and its approaches. As to such property owners it was agreed the railroad companies should not be liable for damages caused by the construction of the viaduct and its approaches. The city agreed to assume all such liabilities, to defend any suits brought against any party or parties to recover damages and to pay any judgments recovered on that account. The second clause of the section, releasing all claims for damages to the property of railroad companies "caused by reason of the construction or maintenance of the said viaduct or approaches," refers and applies to damages of the character dealt with in the first clause, which is the principal subject of the section. Said second clause is immediately followed by the statement that nothing contained in that section should be considered as a waiver by the railroad companies of claims for damages for property taken or damaged for the purpose of widening the street. If those provisions seem ambiguous and create doubt as to what character of claims for damages were intended to be released, the uncertainty seems to be removed by the provisions of sec-

tion 10. That section, after stating that nothing in the agreement should be construed as a grant by the railroad companies to the city of Chicago of the right of way for the widening of Twelfth street, nor as a grant of an easement for the construction of the viaduct over any part of the railroad property, nor as a license to enter upon the property of the railroad companies except for the purpose of removing the present viaduct and for the construction of a new viaduct on land now owned or hereafter acquired for that purpose, states that nothing in the agreement,—not merely nothing in section 10,—shall be construed as a waiver by the railroad companies of their claims "for compensation or damage on account of the taking or appropriation of property for the widening of said street or viaduct, it being the intention of this agreement that the city shall acquire any property necessary for such purpose, whether from the railway companies or others, by purchase or condemnation." This in plain and unambiguous language states that it was not intended by the agreement that the railroad companies released any claim for compensation or damages for property taken in widening the street or viaduct but that property necessary to be taken for that purpose should be acquired by the city by purchase or condemnation. This was stated to be the purpose, intent and effect of the agreement as a whole, while the waiver in the second clause of section 4 referred only to such damages as were dealt with in the preceding clause. As we understand and construe the agreement, there was no waiver by appellants of their right to claim damages for property taken by widening the viaduct. Where appellants' land is taken for the location of columns or pillars to support the viaduct it is a physical appropriation of the land upon which the supports rest, and appellants are entitled to compensation for the land actually taken for that purpose without regard to whether it is a damage or benefit to the remainder of their land and without regard to whether it was or was not an interference with the use

of the remaining land for the purposes to which it was devoted. (See cases before cited.)

The benefits assessed against appellants' property were within the range of the testimony. The court also personally viewed the property, and no valid reason appears for disturbing the judgment on the ground that the assessments exceeded the benefits.

For the error in not making the judgment conform to the viaduct agreement and in allowing no compensation for property actually taken for the support of the columns or pillars on which the viaduct is to be constructed, the judgment is reversed and the cause remanded.

*Reversed and remanded.*